IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ELVIRA JOHNSON                                                                                    PLAINTIFF

v.                          Civil No. 12-2193

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Elvira Johnson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability, disability insurance benefits ("DIB"), supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

The Plaintiff filed her application for DIB and SSI on April 14, 2009. (Tr. 141). The alleged onset date of symptoms was listed as February 8, 2006. (Tr. 141), but was later amended to May 23, 2008 (Tr. 36). The disability claim was based on allegations of chronic asthma, back problems, depression and anxiety, COPD, chronic bronchitis, migraines, hormone problems and sciatic nerve damage. (Tr. 163). Plaintiff's application was denied at the initial and reconsideration levels. (Tr. 84-94). Plaintiff requested an administrative hearing, which was held on August 4, 2010. (Tr. 34-76). Plaintiff was present to testify and was represented by counsel. (Tr. 36). The ALJ also heard testimony from James Armstrong, M.D. and Jim Spragins, a vocational expert ("VE"). (Tr. 35).

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been subsituted for Commissioner Michael J. Astrue as the dedendant in this suit.

At the time of the administrative hearing, Plaintiff was 38 years old (Tr. 159), and possessed a GED. (Tr. 169). The Plaintiff had past relevant work experience ("PRW") as a certified nurse's aid, forklift/floorlift operator, and lineworker in a poultry plant. (Tr. 164)

On November 5, 2010, the ALJ concluded that, although Plaintiff's degenerative disc disease, mild obstructive lung disease, dysthmyia and mood disorder were severe impairments, they did not meet or equal one of the listed impairments in 20 CFR Part 404. (Tr. 15-16). The ALJ found that Plaintiff maintained the residual functional capacity to perform light work, with the following limitations: she cannot climb ladders/scaffolds/ropes; she must avoid extremes of cold, fumes, gases and odors; she can do routine work involving things but not people. (Tr. 16). With the assistance of the VE, the ALJ determined that the Plaintiff could perform such representative occupations as production line assembler, sewing machine operator, and motel housekeeper. (Tr. 19).

Plaintiff requested a review by the Appeals Council on December 30, 2010. The Appeals Council denied the appeal on June 28, 2012.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the

Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion:**

Plaintiff raises two issues on appeal: 1) the ALJ's credibility finding is contrary to SSR 96-7p; and 2) the ALJ erred in evaluating the medical opinion evidence. (Pls.' Br. 13.)

### A. ALJ Assessment of Plaintiff Credibility

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). In discrediting a claimant's subjective complaints, an ALJ is required to consider all available evidence on the record as a whole and is required to make an express credibility determination. *Lowe v. Apfel,* 226 F.3d 969, 971 (8th Cir. 2000) The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints only when they are inconsistent with the evidence as a whole. *Id*. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

#### 1. Side Effects of Medication

The ALJ must properly consider the claimant's testimony regarding significant medication side effects. *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). This requires an express examination of the dosage, effectiveness, and side effects of all medication. *Polaski*, 739 F. 2d at 1322. Failure to include medication side effects in the hypothetical to the VE, "at a minimum," requires the case to be remanded. *Mitchell v. Sullivan*, 925 F.2d 247, 250 (8th Cir. 1991). Likewise, ignoring the VE's testimony concerning medication side effects is troubling. *Porch*, 115 F.2d at 572.

In this case, the Plaintiff testified that she takes Norco[2] four times a day, Neurontin[3] three times a day, and Xanax.[4] (Tr. 56.) She testified that these drugs made her drowsy. (Tr. 60.) This testimony is supported by the drug side effects listed for each of these drugs in the Physician's Desk Reference.[5] Her medical records list a number of other drugs which also include fatigue or drowsiness as side effects, including Lexapro and Clonidine, but these were not referenced in the hearing. (Tr. 474.) The ALJ made also made no note of the possible cumulative and synergistic side effects that often occur when anti-anxiety drugs, narcotic pain medications, and muscle relaxers are taken in combination.

The ALJ posed four hypotheticals to the VE. (Tr. 70-75.) Only one of these hypotheticals included drowsiness due to medication side effects. (Tr. 70-75.) For the hypothetical that did mention side effects, the ALJ asked if someone who could not put in a full work week due to being tired and fatigued, who had side effects from medication and therefore could not concentrate or focus, could hold any job in the US economy. (Tr. 74.) The VE confirmed that there was no job that they could hold. (Tr. 74.) Plaintiff's attorney asked if someone who didn't require unscheduled breaks, but was limited to less than eight hours in any combination would be precluded from full time employment at any exertional level.(Tr. 75.) The VE agreed that was correct. (Tr. 75.)

Despite the Plaintiff's and VE's testimony, however, the ALJ did not account for medication side effects in his RFC assessment. Accordingly, remand is necessary to allow the ALJ to 1) expressly

---

[2]Norco is an opioid analgesic indicated for relief of moderate to moderately severe pain.(accessed Oct. 21, 2013) http://www.pdr.net/drug-summary/norco-5-325?druglabelid=2132&id=1530.

[3]Neurontin is a gaba analog used for seizure control and postherpetic pain management. (accessed Oct. 21, 2013) http://www.pdr.net/drug-summary/neurontin?druglabelid=2477&id=1034.

[4]Xanax is a benzodiazepam drug used for the treatment of anxiety. (accessed Oct. 21, 2013) http://www.pdr.net/drug-summary/xanax?druglabelid=1873&id=1159.

[5]Norco side effects include lightheadedness, dizziness, and sedation. Neurontin side effects include dizziness, somnolence, and fatigue. Xanax side effects include drowsiness, lightheadedness and depression. See PDR, *supra* notes 2-4.

ascertain which drugs Plaintiff is currently taking, and 2) expressly consider the effects of Plaintiff's medication side effects - individually, cumulatively, and synergistically - in the RFC assessment.

### 2. Failure to Quit Smoking

"Impairments that are controllable or amenable to treatment do not support a finding of disability, and failure to follow a prescribed course of treatment without good reason can be a ground for denying an application for benefits." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). However, the treatment in question must be reasonably related to the impairment being plead for disability benefits. *Id.*; *Mouser v. Astrue*, 545 F.3d 634 (8th Cir. 2008). While smoking cessation is related to pulmonary impairments and general health, cessation has not been shown to affect musculoskeletal impairments, *Kelley*, 133 F.3d at 589, or migraines. *Giles v. Barnhart*, 368 F. Supp 2d 924, 945 (N.D. Iowa 2005). Further, significant reduction in smoking activity may be sufficient to show that the claimant is trying to follow doctor's orders. *O'Donnell v. Barnhart*, 318 F.3d 811, (8th Cir. 2003) (claimant's failure to completely stop smoking did not render her complaints of pain non-credible when she had reduced her smoking behavior by seventy-five percent.); 20 C.F.R. § 404.1540 (initial progress in abstinence from drug or alcohol use "may include significant reduction in use.").

In this case, the ALJ placed significant weight on the Plaintiff being a long-time smoker with a two-pack-a-day habit to discount her credibility . (Tr. 18.) There is no dispute that smoking is related to the Plaintiff's COPD, bronchitis, and asthma. But it is not related to her musculoskeletal complaints or migraines. Additionally, Plaintiff also testified that she had reduced her smoking from two-three packs a day to two-three cigarettes as day.(Tr. 64.) Neither of these points were discussed in the ALJ's decision. The ALJ is directed to further develop the record as to this point.

### 3. Doctor-Shopping/Drug-Seeking Behavior

A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations. *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003). It is well-established in the Eighth Circuit that

"drug-seeking" behavior may be used to discredit a claimant's subjective allegations of disabling pain. *Anderson v. Shalala,* 51 F.3d 777, 780 (8th Cir.1995) However, in cases where such behavior has been upheld as a valid factor to discredit claimant testimony, there is generally a clear pattern of such behavior documented in the medical records over a period of time, often by more than one treating physician. *See e.g. Slater v. Barnhart,* 372 F.3d 956, *956* (8th Cir. 2004) ("the record is filled with evidence of drug abuse, alcohol abuse, and drug-seeking behavior, including lying and manipulating others to obtain prescription drugs, self-medicating and failing to follow recommended treatments, drinking six bottles of beer and a bottle of wine daily, and overdosing."); *Anderson v. Barnhart*, 344 F. 3d at 815 (treating psychologist noted "[t]here is a significant possibility of past/present problems with substance abuse...and Anderson's extensive present use of (prescribed) pain medications."); *Anderson v. Shalala*, 51 F. 3d at 779 (over a one-year period claimant received so many injections of steroids and pain killers that "her physicians noted that she displayed drug-seeking behavior and has a possible substance abuse problem.").

In this case, the ALJ noted that, as part of her history of back pain, Dr. Cotner had turned the Plaintiff away as a patient and refused to further prescribe pain medication because she was "doctor-shopping" between himself and Dr. Noonan for pain medication. (Tr. 17.) A close examination of the medical records indicates that this behavior was only noted one time in the record at Exhibit B1F and referenced an approximately two-month period in 2005. The notation certainly raises a legitimate concern that drug-seeking behavior could be occurring. However, without further development of the record by the ALJ it is not clear that one isolated incident over several years of treatment rises to the level necessary to discredit claimant's testimony concerning subjective pain.

    B.    **Evaluation of Medical Opinion Evidence**

Plaintiff argues that the ALJ erred 1) when he did not consider or discuss Dr. Dunaway's Lumbar Spine RFC and 2) when the ALJ's RFC determination was identical to Dr. Armstrong's, who

7

could only open one page of the medical record and had no knowledge of Plaintiff's back issues. (Tr. 44)

"It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'"*Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995). "[A] treating physician's opinion will be granted 'controlling weight,' provided it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir.2000)(citing 20 C.F.R. § 404.1527(d)(2)). However, if the treating physician's opinion is conclusory or inconsistent with the medical records, the ALJ is free to discount it in favor of one from a consulting physician. *Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir. 1995). The regulations also encourage the ALJ to give more weight to a specialist when they are opining about a medical issue related to the their area of speciality than a non-specialist. *Id.* at 378; *Brown v. Astrue*, 611 F.3d 941, 953 (8th Cir. 2010).

"Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch*, 201 F.3d at 1013 (*citing* 20 C.F.R § 404.1527(2); SSR 96–2p.) Those good reasons must include a discussion of the following factors: 1) length of treatment relationship and frequency of examination; 2) nature and extent of treatment relationship; 3) the quality of the relevant evidence used to support the opinion; 4) the consistency of the treating physician's opinion with the rest of the record; 5) if the treating physician is a specialist and if he or she is opining in the area of his or her specialty; and 6) other relevant factors, such as the physician's familiarity with the evidentiary requirements of the disability program. 20 C.F.R. §§ 404.1527(c)(2)(i-ii), (c)(3)-(6); *See also Philips v. Colvin*, 721 F.3d 623, 630 (8th Cir. 2013).

In this case, there are two complete physical RFC statements, the Lumbar RFC by treating physician Dr. Dunaway (Tr. 465), and one by Doctors Donahue and Sauer. (Tr. 424-31). Dr. Armstrong opined an RFC at the final hearing, but did so with knowledge of only one page of the medical record due to a technical issue. (Tr. 44.)

In his Lumbar RFC, Dr. Dunaway stated that Plaintiff could lift less than ten pounds occassionally, ten pounds rarely; could sit for thirty minutes with breaks every two hours; could stand for fifteen-twenty minutes with breaks less than two hours.(Tr. 461-65.) He noted a reduced range of motion, abnormal gait, and positive straight leg raise tests. (Tr. 464.) He found that the Plaintiff should only rarely twist, and should never stoop, crouch, or climb ladders or stairs. (Tr. 464.) Although not cited in his RFC form, in earlier medical records, Dunaway noted "abnormal signal in the spinal cord and partial disc defecation at L4-L5 and L5-S1 disc spaces." (Tr. 458.) This statement corresponds to an MRI scan on Plaintiff performed November 2005. (Tr. 435.) In October of 2006, Dr. Dunaway prescribed physical therapy for the Plaintiff to address chronic low back pain. (Tr. 293-94.) On January 8, 2007, after a physical exam of Plaintiff, Dr. Dunaway noted disc desiccation with chronic low back pain and positive straight leg raises. He prescribed epidural steroid injections. (Tr. 235-36.) Plaintiff received these injections on January 10, 2007. (Tr. 237-50.)

Non-examining medical consultants Dr. Donahue and Dr. Sauer completed a physical RFC based solely on the file. (Tr. 423.) They found she could perform medium work, with a dust and fumes precaution. (Tr. 431.) They found she could occassionally lift or carry fifty pounds, frequently lift or carry 25 pounds; could stand or walk six hours, sit six hours, and had unlimited push-pull capacity. (Tr. 425.) Despite a listed diagnosis of "Lumbar DDD" (Lumbar Degenerative Disc Disease), no postural limitations such as stooping or crouching were indicated. (Tr. 426.)

Looking only at Plaintiff's records in regard to migraines and pulmonary issues, Dr. Armstrong found that Plaintiff could perform light work with pulmonary restrictions. She could sit, stand, and walk

9

for six-eight hours. Lift twenty pounds occassionally, ten pounds frequently. (Tr. 41.) Climbing of ropes, ladders, and scaffolds prohibited. Working at unprotected heights and with dangerous machinery should be occassional. Further, no extremes of heat and cold. (Tr. 41-42.)

The mental RFC indicated that "the claimant is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct, and concrete (unskilled). (Tr. 422.)

Plaintiff has consistently complained of low back pain to several doctors over the period of 2005-2010 represented in the medical records. ( Tr. 219-20, 369-70, 469-70, 474 ) In addition to various narcotic pain medications, she has undergone epidural steroid injections to the back (Tr. 237-50) and physical therapy. (Tr. 287-90.)

The ALJ found that Plaintiff maintained the residual functional capacity to perform light work, with the following limitations: she cannot climb ladders/scaffolds/ropes; she must avoid extremes of cold, fumes, gases and odors; she can do routine work involving things but not people. (Tr. 16)

In coming to this RFC, the ALJ discussed the findings of Dr. Allison and Dr. Westbrook. (Tr. 17-18.) Dr. Dunaway referred the Plaintiff to Dr. Allison, an orthopedic specialist. He found the MRI to be essentially normal, with "no compression or other neurological impingement of the lower extremeties." (Tr. 468.) He did note a slight bulge at the annulus of L5-S1. (Tr. 469.) On physical exam he noted an excellent range of motion, ability to toe walk, heel walk and knee bend without difficulty. (Tr. 468.) He did however, note a mild positive straight leg raise on the right. (Tr. 468.) Dr. Westbrook performed a consultative exam on Plaintiff. He noted "mild decreased disc space at L5." (Tr. 396.) He indicated a negative leg raise for both legs, and no other range of motion issues. (Tr. 392-96.)

In this case, the ALJ declined to give controlling weight to Dr. Dunaway's opinions, and did not discuss his Lumbar RFC. The only reason listed for either of these decisions is that "later medical

records showed she improved" and that neither Dunaway nor other providers ever limited her actions as part of her medical treatment for anything other than a short time after medical procedures. (Tr. 18.) This does not meet the "good reason" standard required when giving the treating physician's opinion little or no weight.

Regarding the ALJ's final RFC finding, Dr. Dunaway, Dr. Allison, and Dr. Westwood all noted at least some level of abnormality at the Plaintiff's L5 lumbar region. Further, Dr, Allen, an orthopedic specialist, found that the Plaintiff did have a positive straight leg raise result for the right leg, consistent with some of the notations in Dr. Dunaway's records. Based on the consistency of these results, the undersigned is puzzled that none of the typical limitations for lower back issues, such as a restriction on stooping or crouching, are to be found in the final RFC.

The ALJ is directed to further develop the record concerning the Plaintiff's physical RFC. Specifically, the ALJ is directed to explicitly provide "good reasons" pursuant to 20 C.F.R. § 404.1527(c)(2)(i-ii), (c)(3)-(6) for giving little weight to Dr. Dunaway's opinions and Lumbar RFC. The ALJ is further directed to contact Dr. Allison and address interrogatories to him concerning possible functional limitations of Plaintiff's work capacity.

**V.    Conclusion:**

Accordingly, the undersigned conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 28th day of October, 2013.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)